**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| GEORGIA AQUARIUM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:13-CV-03241-AT |
| PENNY PRITZKER, in her Official | ) | |
| Capacity as Secretary of Commerce, | ) | |
| NATIONAL OCEANIC AND | ) | |
| ATMOSPHERIC ADMINISTRATION, | ) | |
| and NATIONAL MARINE FISHERIES | ) | |
| SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY TO PLAINTIFF GEORGIA AQUARIUM, INC.'S**
**MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENOR-**
**DEFENDANTS' MOTION TO INTERVENE**

In its Memorandum in Opposition to Movants' Motion to Intervene, Plaintiff

Georgia Aquarium, Inc. ascribes interests to Movants and their members that they

do not assert, while ignoring the direct, substantial, and legally protectable interests

relating to the import of the beluga whales that they do assert, which Plaintiff's

requested relief may impair. Similarly, Plaintiff argues that Movants seek to

litigate issues and claims not raised in their opening brief or Proposed Answer,

while providing no evidence to rebut Movants' arguments for why Defendants may

inadequately represent their interests.  In addition, Plaintiff mischaracterizes key cases supporting intervention as of right.  Movants respond to these issues herein.

**I.     PLAINTIFF ASCRIBES INTERESTS TO MOVANTS AND THEIR MEMBERS THAT THEY DO NOT ASSERT, WHILE IGNORING THE DIRECT, SUBSTANTIAL, AND LEGALLY PROTECTABLE INTERESTS RELATING TO THE IMPORT THAT THEY DO ASSERT, WHICH THE REQUESTED RELIEF MAY IMPAIR.**

Plaintiff ignores the "direct, substantial, and legally protectable" interests of Movants and their members relating to the import that Plaintiff's requested relief— a vacatur of the National Marine Fisheries Service's ("NMFS") denial of the permit application and an order mandating issuance of the permit—*may* impair. This is all the "practical" and "flexible" intervention as of right standard of Rule 24(a)(2) requires.  *See United States v. Perry Cnty. Bd. of Educ.*, 567 F.2d 277, 279 (11th Cir. 1978) ("There is no clear-cut test to determine the nature of the interest required for intervention of right.  Our inquiry is a flexible one . . . and this type of intervention must be measured by a practical rather than technical yardstick.")

**A.     Movants' Asserted Legally Protectable Interests Relating to the Import Do Not Include, And Movants Do Not Seek Intervention to Express, "Opposition to Public Display."**

Plaintiff first argues that Movants assert a legally protectable interest in "opposition to public display" of marine mammals.  Pl.'s Opp'n 2, ECF No. 20. Movants actually state that they oppose "all *live-capture* of cetaceans for public

display." Movants' Br. 22, ECF No. 19-1 (emphasis added). Nevertheless, Movants do not assert that opposition to public display is an interest that is legally protectable under Rule 24(a)(2). Rather, as discussed below, Movants claim that they and their members have direct, substantial, and legally protectable programmatic, conservation, aesthetic, economic, and professional interests "relating to the . . . transaction that is the subject of the action"—the import of eighteen beluga whales from Russia. Fed. R. Civ. P. 24(a)(2). Movants do not dispute that the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. § 1361 et seq., allows for the import of cetaceans for public display, provided certain statutory and regulatory criteria are adequately met. *See* 50 C.F.R. § 216.34.

### B. Movants' Asserted Legally Protectable Interests Relating to the Import Do Not Include a Generalized "Support [for] the Humane Care of Animals at Public Display Facilities," But Rather Particularized Aesthetic Interests in the Welfare of Specific Captive Beluga Whales, Which the Import May Impair.

Plaintiff argues that Movants assert "an interest in ensuring the [eighteen] beluga whales proposed for import live in humane conditions *after* import," Pl.'s Opp'n 4, and that such interests are legally protectable under the Animal Welfare Act ("AWA"), 7 U.S.C. § 2131 et seq., but not the MMPA. Plaintiff misreads, and ignores the practical and flexible standard of, Rule 24(a)(2) in arguing that Movants must fall within the zone of interests of a statute in order to have a legally

protectable interest relating to the import under Rule 24(a)(2).  In the Eleventh

Circuit, Movants do not have to meet such prudential, or any constitutional,

standing rules under Rule 24(a)(2).  *Chiles v. Thornburgh*, 865 F.2d 1197, 1213

(11th Cir. 1989) (articulating a standard for Rule 24(a)(2) that specifically excludes

any standing requirements); *Meek v. Metro. Dade Cnty.*, 985 F.2d 1471, 1480–81

(11th Cir. 1993) (holding that interest group lacking standing could intervene).

Standing cases, however, "are relevant to help define the type of interest that

the intervenor must assert," "for an intervenor's interest must be a particularized

interest rather than a general grievance."  *Chiles*, 865 F.2d at 1212–13.  In this

regard, Plaintiff ignores that the Supreme Court has long recognized the viability

of the aesthetic interest under the "injury-in-fact" prong of the standing test.  *Sierra*

*Club v. Morton*, 405 U.S. 727, 738 (1972) ("interest alleged to have been injured

'may reflect aesthetic, conservational, and recreational,' as well as economic,

values"); *accord Sierra Club v. Johnson*, 436 F.3d 1269, 1279 (11th Cir. 2006).

Movants do not assert a legally protectable interest in "ensuring the

[eighteen] beluga whales proposed for import live in humane conditions *after*

import," Pl.'s Opp'n 4, but rather particularized *aesthetic* interests in the welfare of

specific captive beluga whales that the import may impair.  AWI member, and

Atlanta resident, David Drolet states that he would suffer aesthetic harm when he

visits the Georgia Aquarium to view the fish exhibits and monitor the welfare of the cetaceans and observes the currently captive beluga whales that he has strong personal connections to, and believes live in poor welfare conditions, living in what he believes would be even worse conditions due to the transaction that is the subject of this case—the import of four additional beluga whales to the facility. Drolet Decl. Ex. E ¶¶ 13–15, 17, ECF No. 19-7.  Particularized aesthetic interests in the welfare of specific animals are legally cognizable.  *See, e.g.*, *Animal Legal Def. Fund v. Glickman*, 154 F.3d 426, 431 (D.C. Cir. 1998) (en banc).

Plaintiff tries to diminish Mr. Drolet's aesthetic interests relating to the import on the bases that: (1) he does not have a personal attachment to the to-be imported beluga whales; (2) his plans to visit the facility are vague; and (3) he does not explain how the addition of beluga whales impacts his personal attachment to the ones already there.  Pl.'s Opp'n 6.  On the first and third points, Movants do not assert that it is emotional attachment to an animal that is legally cognizable, but rather Mr. Drolet's "*aesthetic interest* in the observation of [cetaceans]," *Glickman*, 154 F.3d at 431, that he has real connections to not living in more crowded, poorer welfare conditions at the facility due to the import.  Drolet Decl. Ex. E ¶¶ 13–15, 17.  On the second point, Mr. Drolet "regularly visited and plans to keep visiting" the facility, *Glickman*, 154 F.3d at 431; Drolet Decl. Ex. E ¶¶ 13–14, which is

legally sufficient for standing and thus intervention as of right.  Mr. Drolet is one

of many such AWI members.  *See* Millward Decl. Ex. A ¶¶ 6, 12, ECF No. 19-3.

      **C.**    **Movants' Asserted Legally Protectable Interests Relating to the
Import Do Not Include "Generalized Conservation Interests," But
Rather Particularized Aesthetic and Other Interests in the
Sakhalin-Amur Stock of Beluga Whales and Other Cetaceans in
the Region, Which the Import May Impair.**

Movants do not assert "generalized conservation interests," Pl.'s Opp'n 9,

which they recognize are not legally protectable under Rule 24(a)(2).  Instead,

Movants assert particularized programmatic, conservation, aesthetic, economic,

and professional interests in the likely depleted Sakhalin-Amur stock of beluga

whales and other cetaceans in the Sea of Okhotsk, which the import *may* impair by

likely causing future captures—one reason NMFS denied the permit application.

Plaintiff also tries to diminish AWI member Rodney Russ' interests in the

Sakhalin-Amur stock of beluga whales by characterizing his interests as purely

economic.  *See id*. at 10.  Mr. Russ has economic interests in viewing beluga

whales from this stock due to his interest in Heritage Expeditions Ltd., which leads

ecotourism expeditions to view them.  Plaintiff, however, ignores that Mr. Russ, a

conservationist, Russ Decl. Ex. C ¶¶ 3–4, ECF No. 19-5, also has particularized

conservation, aesthetic, and professional interests in this stock of beluga whales.

*Id*. ¶¶ 16, 24.  Indeed, Mr. Russ is one of the few people in the world that regularly

visits and has plans to visit this stock of beluga whales through leading annual ecotourism activities to the Sea of Okhotsk. *Id.* ¶¶ 10–11.  Based on extensive "professional and environmental experience" in the Sea of Okhotsk, Mr. Russ believes that the import would result in future captures of beluga whales from this likely depleted stock, *id.* ¶¶ 19–20, 24–25—one of the very reasons NMFS denied the permit application, *see Denial Letter*, at 1, ECF No. 20-1—which may impair Mr. Russ' conservation and aesthetic interests in these beluga whales.  Plaintiff's arguments disagreeing with Mr. Russ and NMFS that the import will likely lead to future captures from this stock are for the Court to address at the merits stage.

Plaintiff also ignores particularized and legally protectable interests asserted by other Movants and their members.  Notably, Plaintiff ignores the programmatic, conservation, and aesthetic interests of Whale and Dolphin Conservation ("WDC") and its staff members in its Far East Russian Orca Project ("FEROP"), through which it has funded and carried out over a decade of field research on orcas in the Sea of Okhotsk.  Stroud Decl. Ex. F ¶ 6, ECF No. 19-8.  Based on its extensive field research in the region, WDC legitimately believes that the import could lead to the capture of other cetacean species, including the very orcas studied by its FEROP team. *Id.* ¶¶ 10, 12, 14 (describing how the Marchenko live-capture operation and Utrish Dolphinarium, Ltd.—the same entities that captured the

eighteen beluga whales at issue—have captured some of the very orcas studied by
FEROP and are "fueled" by beluga whale sales); *Interview with Dr. Erich Hoyt*,
Senior Research Fellow, WDC, Attach. to Ex. F, at 3 (capture of orcas studied by
FEROP in Sea of Okhotsk "really upset" research team and are "fueled by
international demand that [entities] are no doubt aware of due to beluga sales").

Plaintiff tries to undermine Movants' assertion that the proposed import may
impair such particularized programmatic, conservation, and aesthetic interests by
arguing that they stem from "future conduct of foreign nationals not subject to the
MMPA." Pl.'s Opp'n 17. In so arguing, Plaintiff mischaracterizes cases
indicating that a clear intent of the MMPA is to preserve aesthetic and conservation
interests in domestic and foreign marine mammals. For example, *Animal Welfare
Institute v. Kreps*, 561 F.2d 1002 (D.C. Cir. 1977), held that organizations had
standing to challenge a waiver of the MMPA's moratorium on importation for a
company seeking to import sealskins where they alleged that a waiver by NMFS
would, "[t]hrough sanctioning" foreign take of marine mammals, "impair[] the
ability of members . . . to . . . enjoy [seals] alive in their natural habitat under
conditions in which the animals are not subject to excessive harvesting." *Id*. at
1007. Similar to *Kreps*, Movants and their members assert that the import may

impair their aforementioned aesthetic and programmatic interests by encouraging

excessive take from the likely depleted Sakhalin-Amur stock of beluga whales.

Likewise, *Animal Protection Institute v. Mosbacher*, 799 F. Supp. 173

(D.D.C. 1992), held that members with plans to watch wild false killer whales and

beluga whales in the near future had standing to challenge MMPA permits issued

to public display facilities to import six already captured false killer whales and

four "yet-to-be-captured" beluga whales.  *Id.* at 175, 177.  The court reasoned that:

> *Although Japan and Canada might theoretically export their whales
> elsewhere, the diminution in demand* [due to denying import permit
> applications for already captured and yet-to-be-captured whales]
> *would correlate directly to the diminution in harm to plaintiffs.*  The
> fact that the harm may not be completely forestalled is irrelevant, for
> 'redressability,' as a function of standing [not Rule 24(a)(2)], requires
> only significant mitigation, not complete cessation, of injury.

*Id.* at 177 n.7 (emphases added).  Just as in *Mosbacher*, Movants and their

members assert that the import may impair their aforementioned aesthetic and

programmatic interests by making it much more likely entities will capture

eighteen additional beluga whales from the Sea of Okhotsk—the sole source of

live-captured beluga whales for public display, Stroud Decl. Ex. F ¶ 8—to satisfy

robust foreign demand.  Conceding this point, Plaintiff provides evidence that if it

cannot import the beluga whales, the Russian entity will "most likely" sell them to

entities in China, *Letter from M. Mukhametov* 4, ECF No. 20-2, which would result

in a direct, substantial reduction in demand for live-captured beluga whales from the Sea of Okhotsk. Since Movants have standing under *Mosbacher* and *Kreps*, they satisfy the less rigorous standard for intervention as of right of Rule 24(a)(2).

Further, Movants note that they do not argue that "participation in the administrative process" automatically creates an intervention right, Pl.'s Opp'n 13, only that it is a factor courts have considered in applying the interest test. *See, e.g.*, *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1180 (9th Cir. 2011) (noting Ninth Circuit has held "environmental groups demonstrated an adequate interest [where] they had been active in the administrative process the [agency] initiated"); *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of the Interior*, 100 F.3d 837, 840 (10th Cir. 1996) (considering "persistent record of advocacy for [a species'] protection" in applying interest test); *Mausolf v. Babbitt*, 85 F.3d 1295, 1302 (8th Cir. 1996) (considering fact that organization "consistently demonstrated its interest in [a park's] well-being (as it sees it) and ha[d] worked hard over the years, in various proceedings, to protect that interest" in finding interest test met). Here, Movants participated extensively in the administrative process and have for decades advocated for the protection of cetaceans in the Sea of Okhotsk and against the practice of live-capture of cetaceans for public display. *See, e.g.*, Stroud Decl. Ex. F ¶¶ 5–9, 11.

## II.   PLAINTIFF PROVIDES NO EVIDENCE TO REBUT MOVANTS' SHOWING THAT NMFS *MAY* INADEQUATELY REPRESENT THEIR INTERESTS, WHICH IS FURTHER SUPPORTED BY MOVANTS' PRIOR MMPA PERMIT SUITS AGAINST NMFS.

Movants may rebut the "weak" presumption that NMFS adequately represents their interests by providing "some evidence" of: (1) adversity of interest with NMFS; (2) collusion between Plaintiff and NMFS; *or* (3) nonfeasance by NMFS in representing Movants' interests.  *Clark v. Putnam Cnty.*, 168 F.3d 458, 461 (11th Cir. 1999).  Proposed intervenors can meet the third factor by showing "that they bring something to the litigation that otherwise would be ignored or overlooked if the matter were left to the already-existing parties."  6 Moore's Fed. Practice, § 24.03(4)(a)(i) (Matthew Bender 3d ed. 2013); *See Bradley v. Pinellas Cnty. School Bd.*, 961 F.2d 1554, 1557–58 (11th Cir. 1992) (inadequate representation where proposed intervenors "demonstrate[d] that the present parties [were] unwilling to raise [relevant] issues").  Showing *any* factor is sufficient and "is not difficult."  *Clark*, 168 F.3d at 461.  Further, "[t]here is good reason in most cases to suppose the applicant is the best judge" of whether its interests are already represented adequately.  7C Wright & Miller, *Fed. Practice and Procedure* § 1909.

Here, Movants provide substantial evidence on the first and third factors. On the first factor, Movants point to: (1) NMFS's dual and at times conflicting responsibilities under the MMPA's public display provisions, and (2) their distinct

conservation and animal welfare interests from NMFS.  Movants' Br. 22.  On the

second factor, Movants point to: (1) the fact that this is the first permit application

concerning public display (take or import) denied by NMFS, and (2) their fear that

NMFS will fail to use the scientific review of the Sea of Okhotsk beluga whale

stocks conducted at the June 2013 meeting of the International Whaling

Commission's ("IWC") Scientific Committee to support its decision.  *Id*. at 22–23.

Contrary to Plaintiff's assertion, *see* Pl.'s Opp'n 21, the data underlying, and

results of, the 2013 IWC Scientific Committee review concern two of the three

main issues in this case of whether NMFS arbitrarily and capriciously determined

that Plaintiff failed to adequately demonstrate the regulatory criteria for MMPA

permit issuance at 50 C.F.R. §§ 216.34(a)(4) & (a)(7).[1]  *See* Compl. ¶¶ 101, 130.

Specifically, the 2013 IWC Scientific Committee review analyzed: (1) the choice

of an appropriate recovery factor under a potential biological removal

methodology for the Sakhalin-Amur stock of beluga whales; (2) whether the

Sakhalin-Amur summer aggregation of beluga whales are a discrete stock

genetically and for management purposes; (3) new information on an increase in

---

[1] Under 50 C.F.R. § 216.34(a)(4), a MMPA permit applicant must demonstrate that
"[t]he proposed activity by itself or in combination with other activities, will not
likely have a significant adverse impact on the species or stock."  Section
216.34(a)(7) requires a MMPA permit applicant to demonstrate that "[a]ny
requested import or export will not likely result in the taking of marine mammals
or marine mammal parts beyond those authorized by the permit."

the number of live-capture operations in the Sea of Okhotsk and entities applying for take permits, as well as growing demand for live-captured beluga whales in Asia; and (4) the management scheme for these beluga whales and the likelihood it led and is likely to lead to unsustainable removals and localized depletion of the Sakhalin-Amur stock.  *See* Movants' Br. 23 n.6 (providing hyperlinks to complete IWC documents).  Movants assert that this evidence undermines Plaintiff's claims and supports NMFS denial of the permit application.

Plaintiff provides no evidence to rebut Movants' showing that NMFS *may* inadequately represent their interests.  Instead, Plaintiff states that Movants "offer no evidence that [Federal] Defendants will not present to the Court the [documents related to the 2013 IWC Scientific Committee review]."  Pl.'s Opp'n 21–22. Movants, however, asked NMFS in *two* letters to incorporate this latest scientific evidence in its decision, *see* Millward Decl. Ex. A ¶ 8, ECF No. 19-3; *Letters from AWI*, Attachs. 1 & 2 to Ex. A, but NMFS did not analyze in its decision documents, which is evidence that it may fail or be "unwilling to raise these issues."  *Bradley*, 961 F.2d at 1558.  Plaintiff contends that the 2013 IWC Scientific Committee review does not undermine its claims, *see* Pl.'s Opp'n 21, but "that is a question of the merits . . . and whether [Movants] will prevail . . . is not an element of intervention by right."  *Clark*, 168 F.3d at 462.

Further, courts have considered prior litigation between proposed intervenors and an agency over similar issues a factor in deciding whether representation may be inadequate.  *See Maine v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 20 (1st Cir. 2001) (agreeing with Ninth and Tenth Circuits that "former adversary relationship between the government and proposed intervenors may raise questions about adequacy [of representation]").  As additional evidence that NMFS may not adequately represent their interests, Movants note their significant history of suing NMFS over MMPA take and import permitting issues. *See Comm. for Humane Leg., Inc. v. Richardson*, 414 F. Supp. 297 (D.D.C. 1976) (AWI and Cetacean Society International ("CSI") petitioners); *Kreps*, 561 F.2d 1002 (AWI petitioner); *Mosbacher*, 799 F. Supp. 173 (WDC and CSI petitioners).

## III.  PERMISSIVE INTERVENTION IS APPROPRIATE BECAUSE MOVANTS SEEK TO SHED NEW LIGHT ON RELEVANT ISSUES, NOT TO RAISE NEW CLAIMS OR EXTRANEOUS ISSUES.

Alternatively, Plaintiff argues that permissive intervention is inappropriate because, it claims, Movants "[n]ot only . . . want to litigate issues already decided by Congress and to raise issues under the [AWA], but they want to raise extraneous issues related to the humaneness of the collection of the whales . . . and the[ir] transport."  Pl.'s Opp'n 24.  Movants do not seek to litigate whether the MMPA permits import for public display, but rather whether Plaintiff adequately

14

demonstrated the statutory and regulatory criteria for permit issuance. *See supra* p. 3. Likewise, contrary to Plaintiff's bald assertions, Movants do not seek to raise any such extraneous issues, as their opening brief and Proposed Answer evidence.

Movants emphasize that permissive intervention is granted liberally, particularly where a proposed intervenor has special and relevant expertise and seeks to shed new light on relevant issues. Contrary to Plaintiff, Pl.'s Opp'n 14–15, Movants have decades of special and relevant expertise in cetacean science and conservation. *See generally* Rose Decl. Ex. B, ECF No. 19-4 (discussing scientific issues concerning denial of permit application and contributions to the 2013 IWC Scientific Committee review); Fisher Decl. Ex. D, ECF No. 19-6 (discussing international trade issues). Additionally, Movants seek to shed light on issues related to 50 C.F.R. §§ 216.34(a)(4) & (a)(7), *see supra* p. 12–13, and legal issues and issues of beluga whale ecology and reproduction related to § 1372(b)(2).

## CONCLUSION

For the foregoing reasons, and those in their opening brief,[2] the Court should find that Movants are entitled to intervene as of right with full rights to participate.

---

[2] Movants maintain that § 1374(d)(6) of the MMPA entitles them to intervene as of right under Rule 24(a)(1), and they note that, contrary to Plaintiff's assertions, *see* Pl.'s Opp'n 23 n.19, cases such as *Pellegrino v. Nesbit*, 203 F.2d 463, 468 (9th Cir. 1953), do concern Rule 24(a)(1), *see id.*, and the Second Circuit has not overturned or disapproved of its holding in *In re Caldor*, 303 F.3d 161, 174 (2d Cir. 2002).

Respectfully submitted,

Dated: <u>February 7, 2014</u>          **s/ Jenny R. Culler, Esq.**
                                       Jenny R. Culler
                                       Georgia Bar No. 200456
                                       Donald D. J. Stack
                                       Georgia Bar No. 673735
                                       STACK & ASSOCIATES, P.C.
                                       260 Peachtree Street, Suite 1200
                                       Atlanta, GA 30303
                                       Telephone: (404) 525-9205
                                       Facsimile: (404) 522-0275
                                       E-mail: jculler@stack-envirolaw.com

                                       *Attorneys for Proposed Intervenor-
                                         Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D of the U.S. District Court for the Northern

District of Georgia, I hereby certify that the foregoing brief has been prepared with

Times New Roman font (14 point) in accordance with Local Rule 5.1B.

Dated: <u>February 7, 2014</u>               **s/ Jenny R. Culler, Esq.** _____
                                       Georgia Bar No. 200456
                                       *Attorney for Proposed Intervenor-*
                                         *Defendants*
                                       STACK & ASSOCIATES, P.C.
                                       260 Peachtree Street, Suite 1200
                                       Atlanta, GA 30303
                                       Telephone: (404) 525-9205
                                       Facsimile: (404) 522-0275
                                       E-mail: jculler@stack-envirolaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Jenny R. Culler, hereby certify that on the date indicated below I
electronically filed the foregoing with the Clerk of the Court for filing and
uploading to the CM/ECF system, which will automatically send e-mail
notification of such filing to the following attorneys of record:

Daniel F. Diffley
Georgia Bar No. 221702
Meaghan Goodwin Boyd
Georgia Bar No. 142521
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-4703
Facsimile: (404) 253-8572
E-mail: dan.diffley@alston.com
        meahan.boyd@alston.com

George J. Mannina, Jr.
NOSSAMAN LLP
1666 K Street, N.W., Suite 500
Washington, D.C. 20006
Telephone: (202) 887-1491
Facsimile: (202) 466-3215
E-mail: gmannina@nossaman.com

Ashley J. Remillard
NOSSAMAN LLP
18101 Von Karman Avenue
Suite 1800
Irvine, CA 92612
Telephone: (949) 477-7635
Facsimile: (949) 833-7878
E-mail: aremillard@nossman.com

Clifford E. Stevens, Jr.
U.S. DEPARTMENT OF JUSTICE
P.O. Box 7611
Washington, D.C. 20044
Telephone: (202) 353-7548
E-mail: clifford.stevens@usdoj.gov

Lisa D. Cooper
U.S. ATTORNEY'S OFFICE FOR
  THE NORTHERN DISTRICT OF
  GEORGIA
600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
Telephone: (404) 581-6249
E-mail: lisa.cooper@usdoj.gov

*Attorneys for Federal Defendants*

*Attorneys for Plaintiff Georgia
    Aquarium, Inc.*

Dated: <u>February 7, 2014</u>         **s/ Jenny R. Culler, Esq.**                 
                                      Georgia Bar No. 200456
                                        *Attorney for Proposed Intervenor-
             Defendants*
                                        STACK & ASSOCIATES, P.C.
                                        260 Peachtree Street, Suite 1200
                                        Atlanta, GA 30303
                                        Telephone: (404) 525-9205
                                        Facsimile: (404) 522-0275
                                        E-mail: jculler@stack-envirolaw.com